## INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION and Affiliated Corporations

v.

## The UNITED STATES.

### No. 214–76.

United States Court of Claims.

Oct. 17, 1979.

Stephen D. Gardner, New York City, atty. of record, for plaintiffs; Robert A. Kagan, Elliott A. Lifset, R. Donald Turlington, Jr., and Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, of counsel.

Bruce W. Reynolds, with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and SMITH, Judge.

## OPINION

SMITH, Judge:

This case comes before us, pursuant to Rule 134(b) of this court, on the parties' stipulated facts, and after oral argument. The controversy arises in the context of subchapter N of chapter 1 of the Internal Revenue Code of 1954 (code). Plaintiffs, who elected to file a consolidated federal income tax return for the calendar year 1962, pursuant to sections 1501 *et seq.* of the code, also elected to claim a foreign tax credit against United States income tax pursuant to sections 901 and 902 of the code, subject to the overall limitation of the foreign tax credit provided by section 904(a)(2) of the code in effect during the calendar year 1962. That overall limitation is in the form of a fraction, the numerator of which is taxable income from sources

without the United States and the denominator of which is the entire ("worldwide") taxable income for the same taxable year. There is no dispute between the parties as to the proper computation of the denominator. This court has been asked to determine the proper computation of the numerator in the limiting fraction of the foreign tax credit.

 In order to compute the "taxable income from sources without the United States" (foreign source taxable income), used as the numerator, foreign source *gross* income may be reduced not only by expenses, losses, or other deductions which can definitely be allocated to foreign source gross income, it may also, pursuant to section 863[1] of the code, be reduced by a "ratable part of other expenses, losses, or other deductions which cannot definitely be allocated" either to foreign source gross income or to "sources within the United States" (domestic source gross income). The specific dispute in this case is the proper computation of the ratable part of these "not definitely allocable expenses," generally incurred, which should be charged to foreign source gross income. The essence of the dispute is that plaintiffs contend that this latter computation should be made as if the affiliated group were one unit to which all foreign source *gross* income and all foreign source deductions are ascribed, the net difference between the two being the unit's consolidated foreign source taxable income which is used as the numerator of the limiting fraction; whereas defendant contends that specified items of foreign source gross

income and deductions should be allocated to individual members of the group, items of gross income and deductions not definitely allocable to foreign or domestic sources should be ratably apportioned on a *per-company* basis, and that foreign source taxable income (or loss) should thus be computed on a per-company basis and *then* aggregated to produce the consolidated foreign source taxable income for use as the numerator of the limiting fraction.[2] A difference in computing the numerator can produce a different maximum credit against the tentative tax and result in payment of a different tax liability. The issue is a complex one which we have carefully analyzed with considerable help from the excellent briefs and arguments of both parties. After such analysis it is clear that the proper computation is that which supports the approach taken by plaintiffs, although different in certain aspects which are explained in our opinion.

## I.

Plaintiff, International Telephone and Telegraph Corporation (ITT), is the common parent of an affiliated group of corporations as defined in section 1504(a) of the Internal Revenue Code of 1954.[3] The affiliated members of the ITT group are also plaintiffs. It is stipulated that the members of the ITT group derived gross income from both foreign and domestic sources and paid or are deemed to have paid foreign income taxes on their foreign source income. In incurring their income from all sources, plaintiffs paid necessary expenses

---

1. Treas.Reg. § 1.861–8, restating I.R.C. § 861, in actuality determines the ratable portion of nonallocable expenses allowed in the foreign tax credit. Yet the § 1.861–8 computation is interrelated with regulations § 1.862 and § 1.863. Sections 861, 862, and 863 of the code contained provisions for determining sources of expenses as well as of income. The parties do not disagree as to the amount of the group's total foreign source gross income, the amount of the expenses properly attributable to specified items of foreign source gross income, or to the total amount of the not definitely allocable expenses. The dispute is as to the proper method of *apportioning* this latter amount of expenses so that the two portions arrived at may each be deducted from foreign source

gross income or from domestic source gross income, as appropriate.

2. Plaintiffs rely primarily on Treas.Reg. § 1.1502–43A as the basis upon which this limiting fraction should be calculated. Defendant does not deny the applicability of this regulation, but asserts that the *definition* of "consolidated taxable income" contained in Treas. Reg. § 1.1502–31A controls the computation of the elements of the foreign tax credit limiting fraction.

3. All code references are to the Internal Revenue Code of 1954 as appearing in 26 U.S.C. (1964).

which could not definitely be allocated to a specific source such as "domestic" or "foreign." Their character and amount are not disputed. These expenses are "not definitely allocable expenses." Under sections 901 and 902 of the code, plaintiffs elected to credit rather than deduct their foreign taxes. The amount of such credit is limited by alternative limitations, between which choices plaintiffs selected the "overall limitation" provided in section 904(a)(2).[4]

Treasury Reg. § 1.1502–43A(c)(2), as effective in 1962, allowed an affiliated group filing a consolidated tax return the privilege, available to nonaffiliated taxpayers, of electing, subject to limitation, a credit for foreign taxes paid. That regulation states in part:

> * * * The credit allowable * * * shall not exceed an amount which bears the same ratio to the total tax of the affiliated group against which the credit is taken as the consolidated taxable income of the group * * * from sources without the United States * * * bears to the entire consolidated taxable income. * * *

Therefore, the tax credit allowable is computed as follows:

$$\frac{\text{Consolidated foreign source taxable income}}{\text{Consolidated worldwide taxable income}} \times \frac{\text{Total U.S. tax against which the credit is taken}}{}$$

The limitation on the extent of this credit is restricted by section 904(a) of the code in a manner which assures that the credit will be no more than the total United States tax against which the credit is taken.

The dispute between the parties arises over the calculation of the consolidated foreign source taxable income of the affiliated group. The consolidated income subject to taxation depends on the method of apportioning these "not definitely allocable" expenses. Plaintiffs argue that the proper way to apportion these expenses is by calculating:

$$\frac{\text{Group's total gross foreign source income}}{\text{Group's total gross worldwide income}} \times \text{Total not definitely allocable expenses}$$

This computation produces the amount of the foreign source "not definitely allocable" expenses, which amount is the ratable part which may be deducted, along with specifically allocated foreign source deductions from the group's total of foreign source gross income. The excess is the consolidated foreign source taxable income.

Defendant argues that the *apportionment* of not definitely allocable expenses and the computation of consolidated foreign source *taxable income* is effected by separately determining each constituent member's specified and ratable foreign source gross income and deductions. The Government contends that each member's foreign source taxable income, so determined, should then be added together to determine the consolidated foreign source taxable income of the group.

Plaintiffs have filed a timely claim for refund, with interest and costs as allowed by law, of taxes of $1,695,455.63, paid as a result of the Internal Revenue Commissioner's use of the method contended for by defendant.[5] A separate count relating to the treatment of losses, contained in the petition, has been withdrawn by plaintiffs.

## II.

Before we display the unknotted short pieces which we have patiently picked, one by one, from this tangled mass, a basic explanation of foreign tax credits and consolidated tax returns is in order. Section 901 of the code is entitled "Taxes of Foreign Countries and of Possessions of United States." It reads as follows:

> (a) ALLOWANCE OF CREDIT.—If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the applicable

---

4. Plaintiffs, not having previously elected the other alternative, were not precluded from making this election.

5. This amount appears to include the tax shown on the return as filed in the amount of $52,121.96. If so, this will be taken into account in determining the amount of plaintiffs' recovery.

limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year. The credit shall not be allowed against the tax imposed by section 531 (relating to the tax on accumulated earnings), against the additional tax imposed for the taxable year under section 1333 (relating to war loss recoveries), or against the personal holding company tax imposed by section 541.

(b) AMOUNT ALLOWED.—Subject to the applicable limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):

(1) CITIZENS AND DOMESTIC CORPORATIONS.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *.

As referenced in section 901, section 904(a) places a limitation on the amount of the credit. The limitation in section 904(a)(2), elected by plaintiffs, requires use of a fractional numerator and denominator, the relation between which has significant parallels. The alternative limitations are as follows:

SEC. 904. LIMITATION ON CREDIT.

(a) ALTERNATIVE LIMITATIONS.—

(1) PER–COUNTRY LIMITATION.— In the case of any taxpayer who does not elect the limitation provided by paragraph (2), the amount of the credit in respect of the tax paid or accrued to any foreign country or possession of the Unit-

ed States shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources within such country or possession (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

(2) OVERALL LIMITATION.—In the case of any taxpayer who elects the limitation provided by this paragraph, the total amount of the credit in respect of taxes paid or accrued to all foreign countries and possessions of the United States shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.

As will be seen, the difference between these two paragraphs of section 904(a) has consequences significant to the outcome of this dispute.

The Foreign Tax Credit, by Elizabeth A. Owens,[6] is the only comprehensive treatise in this area for the year involved, and is quoted in the briefs of both parties. In discussing how the limiting fraction is used to compute the extent of the available tax credit, Professor Owens covers both the per-country and the overall limitation.

The per-country limitation as stated in section 904(a)(1) is the standard limitation used by most corporations. In fact, for the years 1954–60 it was the only limitation allowed under United States law.[7] In proposing repeal of this overall limitation, in H.R.Rep.No.1337, 83d Cong., 2d Sess., the Committee on Ways and Means commented: [8]

D. Elimination of the overall limitation on credit (sec. 904)

The credit which is now allowed for foreign taxes is subject to two limita-

6. Published by The Law School of Harvard University, 1961 (hereinafter cited as Owens).

7. Owens at 5 & n.6.

8. [1954] U.S. Code Cong. & Admin. News p. 4103.

tions. The per country limitation restricts the foreign tax which may be claimed as a credit to an amount bearing the same proportion to the taxpayer's total tax liability as the income from the foreign country bears to the total income of the taxpayer. The overall limitation applies a similar formula with respect to the aggregate foreign taxes allowed as a credit. As a practical matter, however, the overall limitation is operative only when a taxpayer earns income in one foreign country and incurs a loss in another. The effect of the limitation is unfortunate because it discourages a company operating profitably in one foreign country from going into another country where it may expect to operate at a loss for a few years. Consequently your committee has removed the overall limitation. The elimination of the overall limitation was in effect until December 31, 1960, when Pub.L.No.86–780, 74 Stat. 1010, took effect. Therefore, for a period of years preceding the year in question, the fraction used by all for determining a foreign tax credit was:[9]

$$\frac{\text{Taxable income from for-} \atop \text{eign country ``X''}}{\text{Total taxable income}} \times \frac{\text{Total tentative United}}{\text{States income tax}}$$

As Professor Owens stated: "[t]he [per-country] limitation is computed by multiplying the United States tax (before credit for any taxes) against which the credit is claimed by a fraction, the numerator of which is taxable income from sources within the foreign country and the denominator of which is total taxable income from all sources, both foreign and domestic."[10] This is similar to the computation that defendant attempted to use in this case; under the purported authority of Treas.Reg. § 1.1502–31A, the Government states that it "apportioned the 'not definitely allocable' expenses

of each member of the ITT Group pursuant to *separate fractions* for each member of the ITT Group * * *." (Emphasis supplied.) This step in the Government's computation is more analogous to the per-country limitation than it is to the overall limitation; however, instead of determining the limiting fraction on a per-country basis, defendant determined the limiting fraction on a per-*company* basis. It must be kept in mind that the parties have stipulated that the limitation involved here is of the *overall* type.

Owens explains the overall limitation by stating that "[t]he amount of the over-all limitation is the amount of the United States tax on aggregate foreign source income. It is computed by multiplying the United States tax (before credit for any taxes) against which credit is claimed by a fraction, the numerator of which is taxable income from sources without the United States and the denominator of which is total taxable income from all sources, both foreign and domestic."[11]

Professor Owens contends that the overall limitation is distinguishable from the per-country limitation in that it limits the amount of the credit to the United States tax on foreign source income on an *aggregate* basis rather than on a country-by-country basis.[12] In other words, the overall limitation is computed not on a per-country or per-company basis, but allows taxpayers to aggregate, not their tax credits, but their taxable income in order to determine what will be the numerator of the limiting fraction, which in turn will determine the extent of taxpayers' foreign tax credit under sections 901, 902, and 904 of the code. The stature of Professor Owens' treatise on the foreign tax credit is well known to this court and has been cited many times.[13]

---

**9.** Owens at 6.

**10.** *Id.* Elaboration on limitation imposed on this particular credit can be found in Owens at 6–7.

**11.** Owens at 8. The above might be better expressed as:

$$\frac{\text{Taxable income from} \atop \text{sources outside the} \atop \text{United States}}{\text{Total taxable income}} \times \frac{\text{Total tentative United}}{\text{States income tax}}$$

**12.** Owens at 8.

**13.** *Motors Ins. Corp. v. United States,* 530 F.2d 864, 875, 208 Ct.Cl. 571, 586 (1976); *Metropoli-*

Therefore her opinion on how the foreign tax credit and its limitations are treated is of some importance here.

## III.

An understanding of consolidated tax returns and the regulation of their use is also important in determining the issues presented. In fact, the relationship between the consolidated tax return regulations and the foreign tax regulations determines the outcome of this dispute.

The first use of consolidated tax returns for a group of corporations was initially authorized by Treas.Reg. 41, art. 78 (1917 ed.).[14] *Gould Coupler Co.*[15] for the first time squarely faced the question of what Congress intended when it stated that " 'corporations which are affiliated * * shall * * * make a consolidated return of *net* income and invested capital for the purposes of * * * [income tax].' " (Emphasis supplied.) The Board of Tax Appeals concluded that "consolidated," as intended, mandates that the total tax of the group should be computed in the first instance as a unit.[16] In that case, two theories were advanced as to the meaning of "consolidated." The "legal" theory as then advocated by the Government was that "consolidated invested capital and net income should be the sum of the amounts of invested capital and net income, separately computed for each of the several affiliated corporations."[17] Taxpayer, on the other hand, contended that Congress did not intend this at all. According to what taxpayer called the "economic unit" theory, "all

intercompany transactions and relationships are eliminated, and a resulting balance sheet and profit and loss statement is obtained which shows the situation as though it were a single business."[18] The Senate Finance Committee, commenting on the Revenue Act of 1918, had recommended the adoption of section 240, which utilized the economic unit theory. Section 1331 of the 1921 Revenue Act also adopted this philosophy.[19]

Congress recognized this "unit" theory as furthering an "equitable and convenient way of dealing with such a situation" (consolidated returns). Thus, consolidated returns were intended "to circumvent intercompany dealing and accounting practices * * * through which * * * net income of a corporation in a group under common control might be artificially increased or diminished * * * with the attendant effect on the taxes upon such company if separately assessed."[20] The Board of Tax Appeals concluded that the legal theory did not accomplish this end. Furthermore, taxes, it was concluded, must be computed as a unit and *not as an aggregate.* "The verb 'to consolidate' means more than to add together; it means to weld into one * * *."[21]

*Gould Coupler Co.* is not an isolated case. The adoption of the "economic unit" theory of consolidated returns is well established in case law.[22]

## IV.

■ Although plaintiffs have conceded the issue they raised with respect to inclu-

tan Life Ins. Co. v. United States, 375 F.2d 835, 838, 179 Ct.Cl. 606, 610 (1967).

14. *American Standard, Inc. v. United States*, 602 F.2d 256, 260 n.3, 220 Ct.Cl. —, — (1979).

15. *Gould Coupler Co. v. Commissioner*, 5 B.T.A. 499, 513 (1926).

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.* at 514. This interpretation has been consistently adhered to through subsequent

changes in the Internal Revenue Code until enactment of the Revenue Act of 1934, when, as defendant says, this treatment was abolished.

20. *Gould Coupler Co. v. Commissioner, supra* note 15, 5 B.T.A. at 515–16.

21. *Id.* at 516.

22. *Gould Coupler Co. v. Commissioner, supra* note 15, 5 B.T.A. at 514; *Farmers Deposit Nat'l Bank v. Commissioner*, 5 B.T.A. 520 (1926); *Owensboro Conserve Co. v. Commissioner*, 8 B.T.A. 615 (1927).

sion of losses in the computation, it is nevertheless important to advert to the treatment of losses as part of the questions involved. In determining the sections 901 and 902 foreign tax credit of a consolidated group, losses sustained by members of the affiliated group affect drastically the outcome of the computation determining the limiting fraction in the sections 901 and 902 tax credit. It was to taxpayers' advantage to exclude the losses, for the overall limitation imposed by the section 904(a)(2) limitation allows the *averaging* of foreign tax rates. Unlike the averaging of tax rates of foreign countries over several periods of time (per country with carryback), the rates in all countries where foreign taxes are paid are averaged in *one taxable year.* A loss here would lessen the amount of credit which may be taken since a foreign tax credit is computed on the basis of net taxable income.[23]

Also, losses affect the operation of the consolidated tax return regulations, as stated in *Gould Coupler Co.*:

> * * * [I]n an affiliation, if the operating deficits were not offset against earned surplus, the consolidated invested capital could be inflated by building up an artificial earned surplus in one member at the expense of others whose invested capital would not be correspondingly reduced. * * * [5 B.T.A. at 517.]

Therefore, operating losses sustained by any member of the group are included in arriving at the consolidated net income. This netting is required since "losses of members of the affiliated group * * * should be offset against income of other members of the group in the same manner that losses on one branch of a single corporation's business may be offset against income from another branch * * *."[24]

The computation of the foreign tax credit limitation depends on the inclusion of losses from the foreign subsidiaries of an affiliated group. Without the inclusion of losses, the numerator in the section 904(a) limiting fraction would be artificially inflated, thus producing a larger tax credit than would be otherwise allowed.

## V.

■ The imprecise terms used in the attempt to regulate the foreign tax credit are a source of confusion. This confusion has resulted in incorrect assumptions that have made the task of plaintiffs and defendant, as well .as the court, very difficult. The defendant asserts that the argument adopted here by plaintiffs ignores the consolidated return regulations in that plaintiffs' computation attempts to treat the affiliated group as one.[25] It is contended by defendant that the method utilized by the consolidated tax return regulations from 1921–28 establishes that "the affiliated group *was* technically *not the* taxpayer of the United States tax." (Emphasis supplied.) Therefore, defendant contends the credit could *not* be taken against *the* total tax of the affiliated group. Building on these premises that there are more than one single "taxpayer" and more than a single tax, defendant reasons that an allocation of tax should be made on a per-company basis. This conclusion must fail because the premises upon which defendant's argument is built provide a foundation of sand supplying no support.

The consolidated return regulations are and always have been a means for the practical enforcement of a legal fiction, namely, that certain groups of corporations are, for purposes of United States income tax, one taxpayer.[26] This fiction does *not* require that the affiliated group take its

23. Owens at 295.

24. *Owensboro Conserve Co. v. Commissioner,* supra note 22, 8 B.T.A. at 620.

25. See Revenue Act of 1921, ch. 136, § 238(a), 42 Stat. 227; Revenue Act of 1924, ch. 234, § 240(b), 43 Stat. 253; Revenue Act of 1926, ch.

27, § 240(b), 44 Stat. 9; Revenue Act of 1928, ch. 852, § 142(b), 45 Stat. 791.

26. *Gould Coupler Co. v. Commissioner, supra* note 15, 5 B.T.A. at 514; *Farmers Deposit Nat'l Bank v. Commissioner, supra* note 22; *Owensboro Conserve Co. v. Commissioner, supra* note 22.

tax credit on per-company basis, as defendant argues. To follow defendant's reasoning would be to say that one corporation, though a single taxpayer, must apportion its foreign tax credit to its various foreign branches proportionately, for they, as the branches, incurred the foreign tax upon which the foreign credit is based.

Defendant further contends that G.C.M. 6640, VIII–2 C.B. 212 (1929), supports this reasoning. We reject this, as we will explain *infra*. This reasoning leads defendant to conclude that the tax credit is to be taken "from" the "consolidated tax liability." [27] In the Government's ingenious argument, this focus on *liability* leads defendant to argue that plaintiffs must take their tax credit on a per-company basis. Defendant has attempted to convince the court that such a requirement is integral to the computation of the foreign tax credit itself. Yet, the foreign tax credit, whether for a single corporation or an affiliated group, has its own rules.

Treasury Reg. § 1.1502–31A, a consolidated return regulation, provides general rules for the computation of *tax liability*, but computation of the foreign *tax credit* requires reference to the specific rules contained in Treas.Reg. § 1.1502–43A, which is also a consolidated return regulation. Treasury Reg. § 1.1502–31A might be controlling if there were no section 1.1502–43A. As indicated *supra*, it is the tentative United States *tax* against which the section 904(a) limiting fraction of the foreign tax credit is applied.[28] The tax "*liability*" from which defendant would require the credit to be "taken" refers only to the tentative United States income tax of the group *before* deducting the credit, for which amount there is no liability, there having been, at that stage, no apportionment of the not definitely allocable expenses necessary to

determine which part thereof will remain subject to the United States tax. Use of the singular term "tax liability" in no way can be said to determine whether the group has a status as one "taxpayer" or more than one "taxpayer" for purposes of computing the foreign tax credit.

This failure of a part of defendant's argument does not, however, resolve the problem of calculating the foreign tax credit. That resolution requires us to proceed with an inquiry into the alleged conflict between Treas.Reg. §§ 1.1502–31A and 1.1502–43A. Although both are "consolidated return regulations," being promulgated pursuant to a consolidated return provision of the code, they have different basic purposes. At the outset, we observe that foreign tax credits are nowhere mentioned in Treas.Reg. § 1.1502–31A, whereas "Credit for foreign taxes" is the very subject heading of Treas. Reg. § 1.1502–43A. We must confess, however, that to yield to the temptation to use this observation as an answer to the questions proposed herein would also result in a simplistic, but nevertheless erroneous answer.[29] Unfortunately, the correct answer requires a tedious tracking through several determining provisions and opinions.

First, we must observe the distinction between a foreign tax credit and a foreign tax deduction.[30] A credit, if the entire amount of qualifying foreign taxes could be credited, would be more advantageous than any deduction. A credit results in the reduction of United States tax on a dollar-for-dollar basis. A deduction on the other hand results in a reduction in the United States tax by only a fraction of the amount of the deduction, depending on the United States tax rate at which a taxpayer is taxed.[31] Therefore, when determining a tax credit it is vital, if the proper tax is to

---

**27.** Defendant uses this term to refer to the *tentative* consolidated tax *before* the credit has been taken "against" it. That tentative tax is not a "liability" and the amount thereof equal to the credit will never be, because it will never be assessed.

**28.** Owens at 8.

**29.** It may also violate the provisions of section 7806 of the code.

**30.** Under T.D. 6674, 1963–2 C.B. 392, taxpayers during the 1962 taxable year had the option to elect whether to take one or the other.

**31.** Owens at 282.

be assessed, that the credit allowed not be artificially inflated. In order to find the section 904(a) limitation on the foreign tax credit, Treas.Reg. § 1.862(b) states that in determining taxable income from sources without the United States:

> * * * From the items of gross income specified in subsection (a) there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto, and a *ratable* part of any expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income. *The remainder, if any, shall be treated in full as taxable income from sources without the United States.* [Emphasis supplied.]

Therefore, when dealing with the foreign tax credit, the ratable apportionment of not definitely allocable deductions *must* be made before it is possible to determine the group's consolidated taxable income.

The parties stipulated the manner in which the revenue agents computed the ITT group's foreign tax credit. Taking each step in the Government's calculation in turn will highlight the errors in that computation. This process will also show the proper application of the authorities relied on by both parties.

Step one and two of the Government's calculation are interrelated and thus will be analyzed together: [32]

| Action | Authority |
|---|---|
| 1. " * * * apportioned the 'not definitely allocable' expenses of *each member* of the ITT Group pursuant to separate fractions for *each member* of the ITT Group * * *." * * * [Emphasis supplied.] | 1. Regulations Section 1.1502–31A(b)(2): "The various other computations required by the regulations under section 1502 to be made by the several affiliated corporations shall be made in the case of each such corporation in the *same manner and under the same conditions* as if a separate return were to be filed * * *." |
| 2. " * * * determined by using *each member's* foreign source gross income as a numerator and its worldwide gross income as a denominator." * * * [Emphasis supplied.] | 2. (a) Regulations Section[s] 1.862–1(b), 1.863–1(c) * * * <br><br> (b) Section 1.861–8, Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.Rev. April 1976) * * *: The ratable part part [*sic*] is based upon the ratio of gross income from sources within the United States to the total gross income. |

In analyzing these "actions," the phrase "not definitely allocable" expenses must be clearly understood. "Not definitely allocable" expenses are those that are not assignable to either a specific domestic or foreign income source.[33] Treasury Reg. §§ 1.862–1(b) and 1.861–8, read together, require that a ratable part of these expenses, based upon the relation of *gross* income from foreign sources to the total *gross* income, shall be deducted in computing foreign source taxable income. The relationship between gross income from foreign sources to total gross income used in computing the ratable portion of the not definitely allocable expenses is in the same proportion as the numerator is to the denominator in the section 904(a) limiting fraction. Therefore, the "not definitely allocable" expenses deduction, attributable to foreign sources, must be taken

32. It may be helpful in following defendant's steps to consider that action No. 2 provided the fraction for determining the apportionment in action No. 1, resulting in the "proportionate" figure used as the subtrahend in action No. 3.

33. Treas.Reg. § 1.862(b) (1966).

from foreign source gross income before the taxable income attributable to foreign sources can be determined. Otherwise, the not definitely allocable expenses deduction would not represent the true measure of "expenses" that were proportionally generated from foreign sources. Therefore, the deductible ratable portion is determined by the same relationship of domestic to foreign taxable income as is used to determine the section 904(a) limiting fraction itself. Omission of the losses here in the calculation of "not definitely allocable" foreign expenses would artificially inflate the numerator.[34]

Otherwise stated, the overall limitation involved in this case demands that the taxable incomes of all the foreign members of the affiliated group be aggregated to determine the numerator and that the denominator is to be the worldwide taxable income of the affiliated group. Only when the entire taxable incomes of all foreign corporations in the group are aggregated first to determine the numerator, and the entire worldwide taxable incomes of all corporations in the group are aggregated to determine the denominator, can the proper fraction be found from which one can ascertain the not definitely allocable expenses that must be deducted from foreign source gross income.[35]

Defendant "apportioned the 'not definitely allocable' expenses of *each member* of the ITT Group pursuant to separate fractions for *each member* of the ITT Group * * *."[36] (Emphasis supplied.) This was error. The justifying difference between the overall limitation and the per-country limitation is that the overall limitation produces an *averaging* of all foreign tax rates.[37] By determining the separate fraction for each member of the group, the Government erroneously influenced this averaging, causing more or less of the not definitely allocable expenses to be apportioned to the foreign sources than would have occurred if the method suggested by Professor Owens had been used. Regardless of defendant's view as to what may be an appropriate allocation, its separate fractions for each member of the ITT group inflated or deflated the numerator to something other than it should have been under the overall method. To approve the Government's fraction would prevent the operation of the overall limitation from working in an internally consistent manner.

Continuing the steps in defendant's computations:

| | Action | | Authority |
|---|---|---|---|
| 3. | "Defendant's agents then subtracted from *each member's* foreign source gross income a proportionate share of the 'not definitely allocable' expenses." * * * [Emphasis supplied.] | 3. | Regulations Section 1.1502–31A(b)(1): "The taxable income of each corporation shall be computed in accordance with the provisions covering the determination of taxable income of separate corporations * * *." |
| 4. | "* * * Defendant's agents required the ITT Group to add together the separate foreign source taxable incomes of *each member* of the ITT Group including the losses of those members which had incurred net losses during the taxable year." * * * [Emphasis supplied.] | 4. | Regulations Section 1.1502–31A(a)(1): "The consolidated taxable income shall be the combined taxable income of the several affiliated corporations * * *." |

---

34. *Motors Ins. Corp. v. United States, supra* note 13, 530 F.2d at 876, 208 Ct.Cl. at 591; *Commissioner v. Ferro-Enamel Corp.*, 134 F.2d 564 (6th Cir. 1943).

35. Therefore, the proper calculation here is:

$$\frac{\text{All foreign taxable income}}{\text{All worldwide taxable income}} \times \begin{array}{l}\text{Not definitely}\\\text{allocable expenses}\end{array}$$

36. See step 1 of the Government's "actions," *supra.*

37. Owens at 8 and 282.

These subsequent actions too must fall as error. In subtracting from *each member's* foreign source gross income a proportionate share of the not definitely allocable expenses, the action of "defendant's agents" effected a distortion of the numerator of the foreign tax credit limitation. Secondly, defendant required the ITT group to add together the separate foreign taxable incomes of *each member*, and the losses of those members which had incurred net losses in the fourth and last step of its computation. Treasury Reg. § 1.862(b), *supra*, contains the provisions for determining taxable income, proceeding from gross income. Since the limiting fraction of the section 904(a)(2) overall limitation is based on the proportion of the foreign *taxable* income, to take further deductions at the *end* of the calculation is improper.[38] To do so is to assume that the fraction determining the "ratable" portion of "not definitely allocable" expenses can be determined separately from and before the section 904(a)(2) limiting fraction is determined. This calculation of the Government erroneously assumes that the overall limiting fraction is based on the foreign *taxable* income as the numerator and the worldwide *taxable* income as the denominator *before* the deductible part of the not definitely allocable expenses is determined.

## VI.

There is little authority to guide us in determining what effect consolidated tax return regulations have on the computation of the foreign tax credit.[39] Professor Owens indicated that Treas.Reg. § 1.1502–43A provides the guide for computation of the foreign tax credit allowable in such a situation.[40] Further, she contends that "[a]ffiliated corporations filing a consolidated return are treated as one taxpayer for purposes of the credit."[41] This is consistent with what we now determine to be the correct approach. Both plaintiffs and defendant have quoted Professor Owens, but have done so in connection with the apportionment of the "not definitely allocable expenses" and the effect of Rev.Rul. 58–618 on this aspect of determining the foreign tax credit. Revenue Rul. 58–618, as well as the analysis adopted by the parties pursuant to that ruling, is erroneous. Both parties argued this point when in fact it has no relation to the issue in this case. Both the Owens discussion and this particular revenue ruling have to do with the *per-country* limitation enumerated in section 904(a)(1) of the code.[42] The effect and validity of both the ruling and Professor Owens' discussion are limited to the confines of the per-country limitation and are irrelevant to the operation of the *overall* limitation enumerated in the second paragraph of section 904(a)(2).[43]

The Government in advocating its analysis of Treas.Reg. § 1.1502–31A is correct in asserting that the section 904(a) limiting fraction, as computed by plaintiffs, is deficient in that it does not include losses. Yet defendant's second assertion that "liability" is all that is determined by Treas.Reg. § 1.1502–43A is incorrect. If defendant's second assertion where upheld it would obliterate the distinction between the per-country limitation and the overall limitation.[44] Further, there would be a differ-

---

**38.** See Rev.Rul. 57–116, 1957–1 C.B. 245; I.R.C. § 63; *Owensboro Conserve Co. v. Commissioner, supra* note 22.

**39.** See Owens at 216.

**40.** *Id. See also* [1964] 38A (2d) Tax Mngm't (BNA) at 82; Rev.Rul. 58–567, 1958–1 C.B. 335; Treas.Reg. § 1.902(2)(d) (1959).

**41.** Owens at 216. See also Rev.Rul. 57–116, 1957–1 C.B. 245.

**42.** Rev.Rul. 58–618, 1958–2 C.B. 430.

**43.** See Owens at 232. As can be seen by Professor Owens' discussion, the per-country limitation is treated in some ways similar to the overall limitation. This does not mean, however, that the per-country limitation itself, or some per-*company* variation thereof, may be considered the equivalent of an overall limitation, when an overall limitation has been elected.

**44.** As noted *supra,* a per-company computation would prevent the averaging of foreign tax rates.

ence in treatment between a corporation with foreign branches and an affiliated group of corporations with foreign subsidiaries. This would create an unintended inconsistency.[45] A corporation with foreign branches is still a single taxpayer. A consolidated group of corporations filing a consolidated return is considered a single taxpayer.[46] If defendant's "liability" argument were upheld and plaintiffs' group were not allowed its computation, there would have been no need for the carryover provision of the section 904(a)(1) foreign tax credit limitation to be added to the code. It has been stated that: [47]

> One of the reasons for amending the Code * * * was to give to taxpayers operating in branch form one of the advantages already available to those operating through subsidiaries, that is, the advantage of averaging foreign tax rates over time. * * *

■ Implicit in this statement is the recognition that both the single corporation with foreign branches and an affiliated group of corporations with foreign subsidiaries, filing a consolidated return, are one taxpayer for United States tax purposes. Even though the Owens observation appears in the discussion involving the per-country limitation, the argument is still valid. To do as defendant suggests would make nonexistent the tax advantages an affiliated group had over a branch operation, that Professor Owens says was the reason behind enactment of the carryover provision.

As is now obvious, plaintiffs' repudiation of defendant's reliance upon Treas.Reg. § 1.1502–31A (that consolidated return regulation setting forth the rules for determination of the consolidated tax *liability* generally) is integral to plaintiffs' case. Plaintiffs insist that the affiliated group is one taxpayer and must be considered as such

under plaintiffs' "unitary theory." Defendant admits that the unitary theory of consolidated tax returns was the correct approach prior to 1934. Defendant's claim that this approach was destroyed as of 1934 is unsubstantiated. In 1942 Congress enacted a law which once again allowed affiliated groups to file consolidated tax returns.[48] It is contended by the Government that in 1942 these reenacted consolidated return regulations were now to be interpreted by Treas.Reg. 89, art. 43 (1934).

If, in fact, Treas.Reg. 89, art. 43, had remained intact until 1962, that continuation would have supported the "sum of separate company" computation, as advocated by the defendant. This was not the case. When some consolidated tax returns were again allowed in 1939, the "sum of separate company" computation was still required. In the beginning of 1942, Treas.Reg. 104, § 23.43, was still in effect. Its existence supports the steps used by defendant, but only in the context of that time. Treasury Decision 5127, 1942–1 C.B. 117, changed this. Section 23.43 of the regulations, which earlier had been article 43 of Treas. Reg. 89, was amended. That regulation was amended in part (b) to state that the credit allowed to the affiliated group for foreign taxes paid should be computed as if the affiliated group were the taxpayer.

This language, treating the affiliated group as a single taxpayer, is directly out of the early Board of Tax Appeals cases. Defendant contends here that after the 1934 abolishment of consolidated tax returns, the meaning or significance of this concept changed during the 1934–42 absence of practically all consolidated tax returns. Yet, the House Committee on Ways and Means used this language again in addressing the credit for foreign taxes in its consideration of the proposed 1954 Internal Revenue Code, making specific reference to sec-

---

**45.** Owens at 232.

**46.** *See* the Board of Tax Appeals cases, *supra* notes 15 and 22.

**47.** Owens at 308. See full discussion at 307–08 and 318.

**48.** Under the Revenue Act of 1936, ch. 690, 49 Stat. 1648, the consolidated return regulations were republished as Treas.Reg. 97.

tion 23.43 of Treas.Reg. 129.[49] Again this "single taxpayer" concept was referred to when the consolidated tax return regulations were adopted in Treas.Reg. § 1.1502–43A in connection with the 1954 Code. The Government has not shown why this intervening period of years significantly changed the earlier concept of an affiliated group as a single taxpayer. If the affiliated group were to be treated as a single taxpayer just for liability purposes, then defendant has yet to show any authority, as it must, to indicate that this is so in contradiction of the case law. If the Government's analysis were correct, a Treasury ruling in 1965 rather than an amendment to the regulations would have sufficed.[50] Further, the Treasury, apparently to remove any doubt as to the effect of Treas.Reg. § 1.1502–4, issued Rev.Rul. 72–281 to bolster its interpretation of the law. 1972–1 C.B. 285.

Treasury Reg. §§ 1.1502–43A and 1.1502–31A together, not merely the definitions in the latter, determine the rights and obligations of an affiliated group when filing a consolidated tax return and also electing a foreign tax credit. The *Owensboro Conserve* case, *supra* note 22, points up the goal of uniformity of treatment that should be applied to both a single corporation with foreign branches and an affiliated group with foreign subsidiaries. The board there spoke to the issues of affiliated groups, losses, and the treatment of a subsidiary for purposes of United States income taxes. As stated by the Board of Tax Appeals, "[t]he affiliated group is one taxpayer for the purpose of determining the net income, losses, deductions and invested capital."[51] In that case the board goes on to say that the allocation of the tax due upon the con-

solidated net income can be apportioned among the subsidiaries in any manner that the affiliated group deems fit.[52] In reference to losses, the Board of Tax Appeals also concluded that "[i]t is not to be supposed that Congress intended that a different rule should be applied under section 204 [of the 1918 Act] in the case of the net loss of a member of an affiliated group than should be applied in the case of consolidated corporations under the provisions of section 240."[53]

For accounting purposes, Treas.Reg. § 1.1502–31A sets guidelines for consolidated groups in preparing their consolidated tax returns, in order to facilitate audit of the operations of the manifold enterprise. This regulation, however, does not provide the calculation involved in computing a foreign tax credit. These provisions of the regulations truly are "intercompany accounting measures" as plaintiffs here assert. In G.C.M. 6640, VIII–2 C.B. 212 (1929), the Treasury in fact faced the issue of the consolidated tax return and its effect on the foreign tax credit.[54] It was stated in that memorandum that when a tax was assessed upon the basis of a consolidated return the total tax should be *computed* at the outset as a unit.[55] The tax itself could be assessed against the members in any manner that they saw fit. *Only* in the absence of any agreement between them would the tax be assessed on the basis of the net income each would report if filing separately.[56] This itself shows that the "unitary" theory is the correct concept to be applied here. As mentioned earlier, defendant has failed to show that the consolidated return regulations and their application changed at all after the temporary moratorium on consolidated returns from 1934–42.

---

**49.** H.R.Rep.No.1337, 83d Cong., 2d Sess. A306 (1953).

**50.** In fact, Treas.Reg. § 1.1502–4(D)(1) promulgated in 1965, did effect essentially the procedure advocated by defendant herein, but only for years *after* 1965. Treas.Reg. § 1.1502–0(a).

**51.** *Owensboro Conserve Co. v. Commissioner, supra* note 22, 8 B.T.A. at 621. See Rev.Rul. 57–116, 1957–1 C.B. 245, I.R.C. § 63.

**52.** *Owensboro Conserve Co. v. Commissioner, supra* note 22, 8 B.T.A. at 621.

**53.** *Id.*

**54.** G.C.M. 6640, VIII–2 C.B. 212 (1929).

**55.** *Id.*

**56.** *Id.*

Our decision in this regard not only accepts the rationale of the opinion in *Gould Coupler Co., supra* note 15, but falls directly in line with the decisions subsequent to *Gould,* such as *Farmers Deposit National Bank* and the *Owensboro Conserve Co.* cases, *supra* note 22. G.C.M. 6640, rather than supporting defendant herein, clearly supports plaintiffs: "Article 631 of Regulations 62, 65, and 69 provides that consolidated returns are based upon the principle of levying the tax according to the true net income of a single enterprise, even though the business is operated through more than one corporation."[57] The Government contends that G.C.M. 6640 merely deals with the issue of liability. If it were merely liability in issue here, then the proper assessment of the taxes would have to be on a separate company basis. G.C.M. 6640 clearly does not allow for this conclusion.

Treasury Reg. § 1.1502–31A has its own place as a charter of intercompany accounting measures. It provides a manner or form of accounting. The Senate Committee on Finance in its report[58] on the consolidated return provisions of the Revenue Act of 1918 stated that even though consolidation would increase the tax in some instances and decrease the tax in other cases, its intended effect was to prevent evasion from taxation that otherwise might be accomplished through false or artificial accounting measures.[59] This again reinforces the conclusion that the 1962 consolidated tax return regulations, embodied in Treas.Reg. § 1.1502–31A, were intended to require the affiliated corporations to prepare their consolidated tax return in a certain manner to assure accountability.

　　*　*　* [A] corporation filing a consolidated return is required to prepare and file such statements and schedules in columnar form to the end that the details of the items of gross income and deduc-

tions for each corporation included in the consolidation may be readily audited.[60]

Treasury Reg. § 1.1502–31A thus has an application when reporting the computation of foreign tax credits. It does not purport to *prescribe* that computation but rather forces the affiliated members of the group to account for their items in the consolidated tax return in such a manner as to safeguard against fraudulent manipulation. Therefore, Treas.Reg. § 1.1502–31A and Treas.Reg. § 1.1502–43A are not mutually exclusive. In fact, Treas.Reg. § 1.1502–31A does prescribe the accounting manner in which the affiliated members are to justify that which each subsidiary reports as its taxable income. The apportionment is calculated "as otherwise provided" in the foreign tax credit regulations in Treas.Reg. § 1.1502–43A. If a section 904(a)(1) per-country limitation were used in the instant case, the taxable income of each member of the group in each foreign country would be added together and this would constitute the numerator of the section 904(a) limiting fraction. The denominator would be the worldwide taxable income of the affiliated group. This fraction in turn would be multiplied by the United States tax against which this per-country credit is taken. This process would be repeated with all foreign countries in which members of the group paid foreign taxes. Then each per-country tax credit would be aggregated to determine the total extent of the affiliated group's foreign tax credit. It should be noted that each per-country calculation would set a limit on the amount of the credit for each foreign country's tax, regardless of how much tax was actually paid to that country.

In summary, when dealing with the *overall* foreign tax credit limitation, the computation is not the same. All foreign members of the affiliated group determine their

---

**57.** *Id.* The Treasury declared this G.C.M. obsolete in 1968. Rev.Rul. 68–674, 1968–2 C.B. 609.

**58.** S.Rep.No.617, 65th Cong., 3d Sess. 8–9 (1933).

**59.** *Farmers Deposit Nat'l Bank v. Commissioner, supra* note 22, 5 B.T.A. at 525.

**60.** Treas.Reg. 45, art. 637 (1920 ed.). This regulation is the forerunner of what now is Treas. Reg. § 1.1502–31A.

taxable incomes for the purpose of the "tentative" tax in the manner prescribed by the accounting provisions in Treas.Reg. § 1.1502–31A. The foreign members then add together their taxable incomes, the total of which is used as the numerator of the section 904(a)(2) limiting fraction. The worldwide taxable income of the whole group, both domestic and foreign, constitutes the denominator. This fraction, once reduced, is multiplied by the United States tax (before the credit for any taxes), and this produces the *maximum amount* available for the consolidated group's credit for foreign tax, even if the group as a whole paid, worldwide, more foreign taxes than this amount. The excess, if any, of the foreign taxes denied deductibility is considered domestic taxable income. The section 904(a)(2) overall limiting fraction is *not* an aggregate of separate limiting fractions.

The section 904(a)(2) limiting fraction, computed in this manner, determines the proportion that foreign source income has to worldwide source income. It is this relationship that section 862 of the Internal Revenue Code of 1954 depends upon to determine how much of the "not definitely allocable" expenses are to be considered foreign and how much of these "expenses" are to be considered domestic, in effect resulting in double taxation to some extent. The plaintiffs followed this approach.

█ As we have said, the regulations supposedly in conflict are truly not. Regulations, their relationship to each other, and the extent of their authority, are affected by the method of their promulgation. Consolidated return regulations are "legislative" in character and have the force and effect of law.[61] Yet these legislative regulations have the effect of law only to the extent that they do not exceed the authority vested in the enabling act.[62]

In the present case, Treas.Reg. § 1.1502–31A fulfills these requirements, but the interpretation adopted by the Government of this regulation does not. Treasury Reg. § 1.1502–31A, in the context that defendant urges here, is misapplied. Whether a certain phrase or word has the same meaning in two different parts of the code depends on the context in which they are used, and the intent behind their use.[63] The same is true of the regulations.

█ The consolidated return regulations were intended to prevent tax evasion and fraudulent manipulation of figures when completing a consolidated tax return. This legislative intent is served when Treas.Reg. § 1.1502–43A is applied in the manner in which it was applied by plaintiffs, to determine the credit which was reported in accordance with Treas.Reg. § 1.1502–31A.

## CONCLUSION

█ In summary, we find that the method of computation advocated by plaintiffs, after withdrawing Count II of the petition, is the correct approach, and that the method used by defendant is erroneous. Accordingly, judgment is entered in favor of plaintiffs, with interest as provided by law, and the case is remanded to the trial division for proceedings under Rule 131(c) to determine the amount of recovery.

**61.** *Union Elec. Co. v. United States*, 305 F.2d 850, 859, 158 Ct.Cl. 479, 486 (1962).

**62.** *American Standard, Inc. v. United States*, *supra* note 14.

**63.** *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 579, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977), aff'g 527 F.2d 649 (7th Cir. 1975); *Solomon v. Commissioner*, 67 T.C. 379, 385 (1976), aff'd, 570 F.2d 28 (2d Cir. 1977).