**In the Matter of ALL PRODUCTS COMPANY, a Michigan corporation, Debtor.**

**Bankruptcy No. 81–05612–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Aug. 29, 1983.

Jaffe, Snider, Raitt & Heuer, P.C. by Thomas J. Tallerico, Detroit, Mich., for Creditors' Committee for All Products Co.

Gardner, Carton & Douglas by David F. Heroy, Chicago, Ill., for Darfield Industries, Inc.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether a parent corporation who files a consolidated return for an affiliated group and obtains a tax saving from the use of a subsidiary's operating loss must compensate the subsidiary for the use of that loss.

Darfield Industries, Inc., a Delaware Corporation, functioned as a holding company managing the operations of and providing services to two of its operating subsidiaries, Sun Valley Products, Inc., and All Products Company (All Products). Darfield performed certain administrative services on behalf of its two subsidiaries, providing management, maintaining general and group insurance, and paying the salaries of personnel. Darfield maintained an account reflecting this indebtedness. Darfield filed consolidated tax returns for itself and the two wholly-owned subsidiaries for the tax years ending April 30, 1975 through April 30, 1981, pursuant to 26 U.S.C. Section 1501, which provides that:

> An affiliated group of corporations shall, subject to the provisions of this

chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations ... of the affiliated group consent to all the consolidated return regulations....

An "affiliated group"
means one or more chains or includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—

(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and

(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.

26 U.S.C. § 1504. For the year ending April 30, 1975, All Products earned a substantial profit but paid no tax because its earnings were offset by losses of the parent. All Products did not compensate the parent for the tax saving it obtained. All Products suffered losses of $1,194,241 for the years 1976 through 1981. The parent utilized these losses to reduce its taxable income but did not compensate the subsidiary for the use of the losses.

An involuntary chapter 7 petition was filed on September 29, 1981. On October 2, 1981, All Products converted the case to a chapter 11 proceeding and ultimately a plan of liquidation was confirmed. At the time of the filing of the involuntary petition in bankruptcy, All Products was indebted to Darfield on the open account in the amount of $381,231.71. The creditors' committee objects to the claim of Darfield, contending that Darfield's claim against All Products should be reduced to reflect the tax benefits which Darfield received and will continue to receive by virtue of filing the consolidated returns.

The question raised by the creditors' committee has been fully explored in *Western Pacific Railroad Corp. v. Western Pacific Railroad Co.,* 197 F.2d 994 (9th Cir.1951) *rev'd on other grounds,* 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953). In *Western,* the parent, Western Pacific Railroad Corporation, had filed consolidated returns for itself and its subsidiaries since 1916. In 1935, one of the subsidiaries, Western Pacific Railroad Company, filed a petition under section 77 of the Bankruptcy Act of 1898. In 1939, the Interstate Commerce Commission approved a plan of reorganization, which was approved by the court *In re Western Pacific Railroad Co.,* 34 F.Supp. 493 (N.D.Cal.1940). Since the subsidiary was insolvent, the parent's stock was worthless and, therefore, the plan did not provide for the parent's participation in the reorganized subsidiary. The parent unsuccessfully appealed this determination, and the plan was finally confirmed by the court on October 11, 1943. On April 30, 1944, the parent relinquished its stock in the subsidiary and this stock was subsequently cancelled. While the subsidiary was operated by the trustees, it had substantial earnings for the years 1942, 1943, and the first four months of 1944. During this time, the parent continued to file consolidated returns and used its stock loss to offset the earnings of the successfully reorganized subsidiary. The subsidiary was thus able to save approximately 17,000,000 dollars in taxes. In October of 1946, the parent instituted an action seeking compensation for the tax benefit obtained by the subsidiary resulting from the filing of the consolidated returns. The parent contended that the parent's officers and directors, who were also officers and directors of the subsidiary, breached their fiduciary duty to the parent by failing to exact compensation from the subsidiary for the use of the parent's tax loss and, therefore, the court should order that at least part of the tax saving that inured to the subsidiary be turned over to it. The United States District Court entered a judgment

denying the request for relief. *Western Pacific Railroad Corp. v. Western Pacific Railroad Co.,* 85 F.Supp. 868 (N.D.Cal.1949). The Ninth Circuit affirmed the district court ruling. The basis for the court's affirmance may be summarized as follows.

1. Duality of management and control is not per se insidious.

2. Consolidated returns had been filed by the parent since 1916. The practice had always been to assess tax liability pro rata to those members of the group who had taxable income without allocating any tax to a company showing a loss or without paying such company tribute for the use of its loss.

3. Neither the Internal Revenue Code nor the regulations accompanying the Code require that a tax saving "must or should inure to the benefit of the parent company or the company which has sustained the loss that makes possible a tax saving." 197 F.2d at 1004.

4. No basis existed for finding fraud, unfairness or overreaching. Accordingly, the business judgment of the directors and officers should not be overturned.

Other courts, relying on a like analysis, have reached a similar result. *Case v. New York Central Railroad Co.,* 15 N.Y.2d 150, 204 N.E.2d 643, 256 N.Y.S.2d 607 (N.Y. 1956); *Myerson v. El Paso Natural Gas Co.,* 246 A.2d 789 (Del.Ch.1967); *see also, Jump v. Manchester Life & Casualty Management Corp.,* 579 F.2d 449 (8th Cir.1978).

The instant case presents the reverse factual pattern. A loss subsidiary and a profit parent, with the parent utilizing the losses incurred by the subsidiary to obtain a tax saving. No persuasive reason exists for differentiating cases where the subsidiary obtains a tax benefit from losses incurred by the parent, and cases where the parent obtains a tax saving because of losses incurred by the subsidiary. *Western Pacific Railroad Corp.* The only question is whether facts are present to justify a court to disregard what the parties agreed to do and to impose its own rule of fairness. There are none. Consolidated returns were filed on behalf of the affiliated companies for seven years beginning with 1975. All Products consented to the filing of such returns. All Products was not required to compensate Darfield for the tax benefit realized by All Products for the use of Darfield's losses in 1975. No equitable justification exists for now requiring Darfield to compensate creditors for the tax saving Darfield obtained in 1976 through 1981.

The cases relied upon by the creditors' committee, *Western Dealer Management, Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.),* 473 F.2d 262 (9th Cir.), *cert. den.* 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973), and *Jump v. Manchester Life & Casualty Management Corp.,* 579 F.2d 449 (8th Cir.1978), do not compel a different result. In *Richards,* the parent filed a consolidated return for itself and a subsidiary for the years 1965 and 1966. For the year 1966, the parent was entitled to a carryback refund of approximately $10,000, attributable to pre-1965 earnings of the subsidiary. An involuntary bankruptcy proceeding was instituted against the subsidiary prior to the parent's receipt of the refund. When the involuntary was filed, the subsidiary was indebted to the parent in the amount of $45,000. The trustee in bankruptcy filed an application for an order directing that the tax refund be turned over to him. The parent resisted the application, claiming that it had a right to setoff the refund against the $45,000 debt owing to it by the subsidiary. The court reaffirmed the principles established in *Western* by stating that, if the parties agree either expressly or impliedly to adjust among themselves the tax liability resulting from the filing of consolidated tax returns, such an agreement is not to be disturbed by the court "absent fraud, unfairness or overreaching." *In re Bob Richards Chrysler-Plymouth,* 473 F.2d at 264 n. 4. The court, however, directed that the refund, attributable solely to the subsidiary's earnings for years prior to the filing of the consolidated returns, be turned over to the trustee. It did so only because it found that the filing of the returns for the limited period of time did not evidence an agreement that the

subsidiary consented to the parent's use of its earnings without compensation. Clearly, *Richards* is distinguishable.

In *Jump,* the facts were as follows. Manchester Life & Casualty Management Corporation (parent) owned substantially all of the stock of Manchester Insurance and Indemnity Company (subsidiary). The parent filed consolidated returns for the years 1970, 1971, 1972, 1973 and 1974. Each subsidiary would calculate its separate federal income tax liability and pay that amount to the parent. During the years 1970, 1971 and 1972, the subsidiary paid the parent a total of $733,505 as its contribution to the consolidated tax liability of the group for those years. In 1973 and 1974, the subsidiary suffered substantial losses and made no payments. In 1973, the parent received a carryback refund of $703,255 and paid this entire amount to the subsidiary. However, this amount was not sufficient to reimburse the subsidiary totally for taxes that the subsidiary had paid the parent during the income producing years and left a balance of $30,250. The 1974 net operating loss was over 3,000,000 dollars and, as a direct result of this loss, the affiliated group sustained a net loss of a similar amount. On March 15, 1975, the parent filed an application with the IRS for a tax refund. On May 8, 1975, the parent received a refund of $811,450.36 for taxes paid in the years 1971 and 1972. On September 23, 1975, the state court of Ohio, with the consent of the subsidiary's Board of Directors, appointed a conservator for the assets of the subsidiary. Subsequently, the same court adjudicated the subsidiary insolvent and ordered its liquidation. The conservator thereafter instituted an action in the United States District Court to recover the $811,450.36 refund received by the parent, contending that the subsidiary's tax loss was a valuable asset, and that the parent was guilty of a breach of the fiduciary duty owed to the subsidiary by converting this asset to its own use without compensating the subsidiary. The district court awarded the conservator $30,-250, representing the remaining balance paid by the subsidiary for its income tax liability for the years 1970 to 1971. On appeal, the Eighth Circuit affirmed the holding of the district court. The court held consistently with *Western* that the parent did not have any fiduciary duty to compensate the subsidiary for its continuing cooperation in the filing of consolidated returns, and that the subsidiary was not entitled to share in the consolidated refund in an amount greater than the amount paid by the subsidiary for its tax liability share, the amount which the district court had awarded. Clearly, there is nothing in *Jump* which supports any of the arguments raised by the creditors' committee.

The creditors' committee also contends that section 510(c) of the Bankruptcy Code requires that the claim of Darfield be, at least in part, subordinated to the claims of other creditors. Section 510(c), in pertinent part, provides that:

[A]fter notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest;

11 U.S.C. § 510(c)(1). Section 510(c) was intended to codify existing principles of equitable subordination embodied in cases such as *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), and *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). H.R.Rep. No. 595, 95th Cong., 1st Sess. 359 (1977), *reprinted in* 1978 *U.S.Code Cong. & Ad. News* 5963.

To establish that subordination is an appropriate remedy, the proponent must establish the following elements:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 700 (5th Cir.1977) (citations omitted).

816

■ [A] claim may normally be subordinated only if its holder is guilty of misconduct. H.R.Rep. No. 595, 95th Cong. 1st Sess. 359 (1977). "Equitable subordination is a harsh remedy." *In re Featherworks Corp.*, 25 B.R. 634, 649 (Bkrtcy.E.D.N.Y. 1982). It is a remedy that is not to be lightly invoked. Domination of a subsidiary by a parent standing alone is not sufficient to invoke the doctrine.

It is not the mere existence of an opportunity to do wrong that brings the rule into play; it is the unconscionable use of the opportunity afforded by the domination to advantage itself at the injury of the subsidiary that deprives the wrongdoer of the fruits of his wrong.

*Comstock v. Group of Institutional Investors,* 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911 (1948).

■ The creditors' committee has not demonstrated that Darfield engaged in any type of fraudulent or inequitable conduct to justify subordination of Darfield's claim.

An appropriate order to be submitted.