**In re Jerome Griggs BEERY d/b/a Jerome G. Beery Brownville Grain Company, Debtor.**

**Bankruptcy No. 88–4167–R.**

United States District Court, D. Kansas.

June 7, 1990.

---

Jerome G. Beery, Los Alamos, N.M., pro se.

Lloyd D. Swartz, Topeka, Kan.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from the bankruptcy court. The debtor/appellant Jerome G. Beery appeals from an order denying his objections to the estate's tax returns.[1] Specifically, he argues that the bankruptcy court erred in allowing the trustee to use loss carryforwards on the estate returns. Having carefully reviewed the materials before the court, we are now prepared to rule.

Prior to 1976, Beery operated a grain brokerage firm as an individual. On January 16, 1976, Beery filed a voluntary petition seeking relief under Chapter XI of the Bankruptcy Act. Beery was eventually adjudicated a bankrupt, and the case was converted from a Chapter XI to a Chapter VII liquidation. Beery was denied a discharge on May 13, 1987. During the course of the bankruptcy, the trustee prepared and filed annual tax returns for the estate. Returns were filed for the years 1976 through 1986. On October 2, 1987, Beery filed an objection to the "fraudulent" tax returns filed by the trustee. Beery argued that the estate was not entitled to utilize any net operating loss carryforwards on the returns. Beery relied upon *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) for support. On July 6, 1988, the bankruptcy court overruled Beery's objection. The bankruptcy court found that the net operating loss carryforwards were property of the estate which the trustee was entitled to use until abandoned or exhausted. This appeal followed.

In *Segal*, the Supreme Court was concerned with the issue of whether a net operating loss carryback was property of the bankruptcy estate. The debtors, two partners and their partnership, commenced their bankruptcy cases by filing bankruptcy petitions at the end of the third quarter of 1961. After the close of that calendar year, the partners filed for tax refunds for the two years prior to the year of the bankruptcy by applying and carrying back losses incurred by the partnership in 1961 prior to the filing of the bankruptcy petitions. The Supreme Court held that the potential claims for loss carryback refunds due to prebankruptcy losses were property of the estate. In so holding, the Court ruled that bankruptcy purposes controlled the definition of property under 11 U.S.C. § 110(a)(5) rather than the meanings attributed to "property" in other contexts. The Court added:

> The main thrust of [11 U.S.C. § 110(a)(5)] is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed ... Turning to the loss-carryback refund claim in this case, we believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as "property" under [§ 110(a)(5)].

382 U.S. at 379–80, 86 S.Ct. at 515.

The *Segal* Court specifically left open the question raised in the instant appeal. The

---

1. This case is governed by the Bankruptcy Act of 1898 because the debtor filed his voluntary petition for bankruptcy in 1976, prior to the passage of the Bankruptcy Act of 1978.

debtors in *Segal* had argued that since the trustee's claim to the refunds depended on the notion that a net operating loss is estate property, to hold that the refunds belonged to the estate was also to hold that loss carryovers likewise belonged to the estate. *Id.* at 381, 86 S.Ct. at 515–16. They argued that to so hold would force bankrupt estates to be kept open for long periods. The Court recognized that in cases involving individuals, such a holding might unduly penalize an individual's fresh start because of his inability to use loss carryovers that would not likely be used by the trustee in liquidating the estate. The Court stated:

> While in fact the trustee can obviate this detriment to the estate—by selling a contingent claim in some instances or simply forgoing it—inconvenience and hindrance might be caused for the bankruptcy individual. Without ruling in any way on a question not before us, it is enough to say that a carryover into post-bankruptcy years can be distinguished conceptually as well as practically. The bankrupts in this case had both prior net income and a net loss when their petitions were filed and apparently would have deserved an immediate refund had their tax year terminated on that date; by contrast, the supposed loss-carryover would still need to be matched in some future ·year by earnings, earnings that might never eventuate at all.

*Id.*

The circumstances of this case fail to raise the concerns noted by the Supreme Court in *Segal.* Here, the loss carryforwards have been utilized by the trustee for many years. This bankruptcy has continued for a considerable length of time in large part due to the actions of the debtor. The debtor's estate did generate considerable income, and the loss carryforwards were a valuable asset of the estate. The "fresh start" doctrine articulated in *Segal* has little importance here since the debtor was denied a discharge because he was convicted of concealing assets and withholding a document from the trustee in violation of 18 U.S.C. § 152. Accordingly, we find no error in the decision of the bankruptcy court in overruling the debtor's objection to the tax returns filed by the trustee. The loss carryforwards were property of the estate because they were sufficiently rooted in the pre-bankruptcy past and not sufficiently entangled with the debtor's ability to make an unencumbered fresh start. The trustee was clearly entitled to use the pre-petition net operating loss to offset income earned by the estate during the pendency of the bankruptcy case.

IT IS THEREFORE ORDERED that the bankruptcy court's order of July 6, 1988 is hereby affirmed.

IT IS FURTHER ORDERED that the trustee's request for attorney's fees is hereby denied.

IT IS SO ORDERED.