928 F.2d 565
 67 A.F.T.R.2d 91-972, 59 USLW 2590, 92-2
USTC P 50,491,
24 Collier Bankr.Cas.2d 1503, 21 Bankr.Ct.Dec. 838,
Bankr. L. Rep. P 73,863
 In re PRUDENTIAL LINES INC., Debtor.
The OFFICIAL COMMITTEE OF UNSECURED CREDITORS and Cold
Spring Shipping, L.P., Appellees/Cross-Appellants,
v.
PSS STEAMSHIP COMPANY, INC., Appellant/Cross-Appellee.
 Nos. 1023, 1131, Dockets 90-5063, 90-5073.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 6, 1991.
Decided March 20, 1991.
 
 W. Bruce Johnson, New York City (Richard O'Toole, Joanne Wilson, and Battle Fowler, New York City, on the brief), for appellant, cross-appellee PSS S.S. Co., Inc.
 Max O. Truitt, Jr., Washington, D.C. (Wilmer, Cutler & Pickering, Washington, D.C., Allan L. Gropper, and White & Case, New York City, on the brief), for appellees, cross-appellants Cold Spring Shipping, L.P. and The Official Committee of Unsecured Creditors.
 Before TIMBERS, NEWMAN and ALTIMARI, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant/cross-appellee PSS Steamship Company, Inc. (PSS) appeals from an order entered September 28, 1990, in the Southern District of New York, Robert P. Patterson, District Judge, affirming an order of the bankruptcy court that permanently enjoined it from taking a worthless stock deduction on its 1988 federal income tax return with respect to its bankrupt subsidiary Prudential Lines, Inc. (PLI), since that would have adversely affected PLI's ability to carryforward its net operating loss (NOL) to offset future income.
 
 
 2
 On appeal, PSS contends that (1) the NOL generated by PLI was not property of PLI's estate within the meaning of Sec. 541 of the Bankruptcy Code; and (2) the bankruptcy court erred in enjoining PSS from taking a worthless stock deduction on its 1988 federal income tax return as violative of the automatic stay. On cross-appeal, the Official Committee of Unsecured Creditors (Creditors' Committee) and Cold Spring Shipping, L.P. (Cold Spring) contend that the bankruptcy court erred in denying relief based on a violation of PSS' fiduciary duty to PLI.
 
 
 3
 Since we agree with Judge Patterson's excellent district court opinion and for the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 4
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 5
 At all times relevant to this appeal, PLI was a wholly owned subsidiary of PSS that provided United States flag shipping between ports in Europe and the Black Sea. Spyros S. Skouras, Sr. is chief executive officer and a director of PSS, and was Chairman and President of PLI until his resignation in November 1989. Spyros S. Skouras, Jr. was Vice President, General Manager, and a director of PLI. In addition, Skouras, Jr. has participated in the financial and tax affairs of PSS since 1986. In that capacity, he consults with PSS' tax counsel and accountants and relays information to his father.
 
 
 6
 PSS and PLI, along with two other affiliated entities have filed consolidated tax returns since 1976 pursuant to 26 U.S.C. Sec. 1501 et seq. (1988). In 1988, these entities had a combined NOL of $75 million available to be offset against income. Of that amount, $74 million was attributable to PLI's pre-bankruptcy operations. NOLs are tax deductible and may be carried back and applied against income in previous years (carryback), or carried forward and applied against income in subsequent years (carryforward). 26 U.S.C. Sec. 172 (1988).
 
 
 7
 On September 12, 1986, an involuntary petition for reorganization under Chapter 11 of the Bankruptcy Code was filed against PLI. Soon thereafter, PLI consented to an order for relief. The Creditors' Committee was appointed pursuant to 11 U.S.C. Sec. 1102 (1988) to represent the interests of PLI's unsecured creditors. Cold Spring purchased a participation interest in the unsecured claim of the United States Maritime Administration (MARAD).
 
 
 8
 In the summer of 1988, Skouras, Sr. and Skouras, Jr. began to formulate a plan for reorganization on behalf of PLI (the "PLI plan"). In connection with that plan, they prepared a term sheet dated August 4, 1988, which indicated that, under the PLI plan, the Skouras family would retain control of PLI and a NOL carryforward of $74 million would be available to offset future income of the reorganized company.
 
 
 9
 In February 1989, PSS was informed by tax counsel and by its accountants that it could take a $38.9 million worthless stock deduction in connection with its PLI stock on its 1988 federal income tax return. If PSS took that action, it would effectively eliminate the value of the NOL to PLI. Later that month, PLI filed a plan for reorganization with the bankruptcy court. Under that plan, Skouras, Jr. would retain a 75 percent interest in the reorganized company and serve as President. Skouras, Sr. would serve as Chairman of the reorganized company. The disclosure statement accompanying the PLI plan contemplated the availability of PLI's NOL to offset future income of the reorganized company.
 
 
 10
 In July 1989, PSS' accountants prepared a draft federal income tax return for 1988 that reflected a worthless stock deduction in connection with the PLI stock. The following month PLI filed an amended plan of reorganization. The disclosure statement accompanying the amended PLI plan still reflected the availability of the NOL carryforward to the reorganized company. It did not mention the possibility of PSS taking a worthless stock deduction on its 1988 federal income tax return.
 
 
 11
 The PLI plan failed to win the support of the creditors. On September 11, 1989, the Creditors' Committee and Cold Spring filed a draft of a joint plan for reorganization (creditors' plan). That plan provided for new management of the reorganized company and provided for no distributions to the Skouras family. The PLI stock owned by the Skouras family was to be cancelled. Like PLI's plan, it also contemplated a carryforward of PLI's $74 million NOL. In an objection to this plan, filed September 19, 1989, PSS announced for the first time its intention to take a worthless stock deduction in the amount of $38.9 million in connection with its PLI stock on its 1988 tax return.
 
 
 12
 Skouras, Jr. attended three meetings with officials of MARAD, the unsecured creditor holding the largest single claim against PLI, to urge them to support the PLI plan and reject the creditors' plan. At one of these meetings, Skouras, Jr. provided MARAD with a written comparison of the two plans that described the NOL as preserved under the PLI plan and uncertain under the creditors' plan. Skouras, Jr. informed MARAD that PSS might take a worthless stock deduction on its 1988 tax return, which would limit any NOL available to a reorganized PLI.
 
 
 13
 On October 10, 1989, counsel for PLI met with counsel for the Creditors' Committee and Cold Spring. At that meeting counsel for PLI broached the subject of personal releases in favor of Skouras, Sr. and Skouras, Jr. in the event the creditors' plan was confirmed. The Creditors' Committee and Cold Spring sought assurances that PSS would not take the worthless stock deduction. PSS agreed, subject to revocation by written notice, that it would not take the deduction while negotiations continued.
 
 
 14
 On November 6, 1989, after the negotiations failed, PSS informed Cold Spring by letter that it reserved the right to take the worthless stock deduction. On the following day Skouras, Jr. met with officials at MARAD and presented them with a copy of the letter. He told them that he did not know whether PSS actually intended to take the worthless stock deduction on its 1988 federal income tax return.
 
 
 15
 PLI rejected the request of the Creditors' Committee and Cold Spring to take steps to prevent PSS from taking the worthless stock deduction. Skouras, Sr. resigned from his positions with PLI, effective November 3, 1989, after PSS decided to take the worthless stock deduction on its 1988 tax return.
 
 
 16
 On November 13, 1989, the Creditors' Committee and Cold Spring commenced an adversary proceeding in the bankruptcy court seeking to have PSS preliminarily and permanently enjoined from taking the worthless stock deduction on its 1988 tax return. Count one of the complaint alleged that taking the worthless stock deduction on its 1988 tax return would amount to a breach of PSS' fiduciary duty to PLI. Count two alleged that PSS was using the threat of the worthless stock deduction only to interfere with the creditors' plan to reorganize PLI. Count three alleged that the NOL attributable to PLI was property of PLI's bankruptcy estate and that taking the worthless stock deduction would violate the automatic stay provision of the Bankruptcy Code.
 
 
 17
 On November 21, 1989, the bankruptcy court held a hearing on plaintiffs' motion for a preliminary injunction. At the conclusion of the hearing, the bankruptcy court denied relief on counts one and two, holding that there was a legitimate business purpose for taking the worthless stock deduction and that the business judgment rule precluded further review of the propriety of that decision. On December 4, 1989, the bankruptcy court granted preliminary injunctive relief on count three. Official Committee of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.), 107 B.R. 832 (Bankr.S.D.N.Y.1989). The bankruptcy court held that the NOL generated by PLI was property of PLI's bankruptcy estate and that the worthless stock deduction was an attempt to exercise control over that property in violation of the automatic stay. On December 19, 1989, the bankruptcy court permanently enjoined PSS from taking the worthless stock deduction on its 1988 tax return. Official Committee of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.), 114 B.R. 27 (Bankr.S.D.N.Y.1989). The creditors' plan for reorganization was confirmed on December 15, 1989. PSS has not yet filed its 1988 tax return.
 
 
 18
 PSS appealed from the decision of the bankruptcy court to the district court pursuant to 28 U.S.C. Sec. 158(a) (1988). The Creditors' Committee and Cold Spring cross-appealed from the bankruptcy court's denial of the injunction on counts one and two. On September 28, 1990, the district court affirmed the judgment of the bankruptcy court. Official Committee of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.), 119 B.R. 430 (S.D.N.Y.1990). The district court denied the cross-appeal without prejudice.
 
 
 19
 This appeal followed.
 
 II.
 
 20
 Initially, we set forth our standard of review. Our review of the district court order is plenary. Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1388 (2 Cir.1990); Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3 Cir.1988). "This court exercises the same review over the district court's decision that the district court may exercise [over the bankruptcy court's decision]." Brown, supra, 851 F.2d at 84. Accordingly, we will accept the bankruptcy court's findings of fact unless clearly erroneous. In re Manville Forest Prods., supra, 896 F.2d at 1388; Bankr. Rule 8013. We review the bankruptcy court's legal conclusions de novo. In re Manville Forest Prods., supra, 896 F.2d at 1388.
 
 III.
 
 21
 With the foregoing in mind, we turn first to PSS' contention that the NOL attributable to PLI does not constitute property of PLI's bankruptcy estate within the meaning of Sec. 541 of the Bankruptcy Code. PSS contends that the law of consolidated tax returns gives it, and not PLI, the right to use PLI's NOL to offset income. PSS contends that the right to the NOL carryforward is not PLI's property and cannot be considered property of PLI's estate. We disagree.
 
 
 22
 Our inquiry begins with the definition of property of the estate set forth in the Bankruptcy Code. Property of the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1) (1988). In construing this section, we are mindful that Congress intended Sec. 541 to be interpreted broadly. United States v. Whiting Pools, Inc., 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). To facilitate reorganization, it is vital to include all the debtor's property in its bankruptcy estate. Id. at 203, 103 S.Ct. at 2312.
 
 
 23
 The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law. Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1101 (2 Cir.1990); Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.), 874 F.2d 88, 93 (2 Cir.1989). Whether that interest is included in the property of the debtor's estate is determined by bankruptcy law. In re Crysen/Montenay, supra, 902 F.2d at 1101; Coben v. Lebrun (In re Golden Plan of California, Inc.), 37 B.R. 167, 169 (Bankr.E.D.Cal.1984).
 
 
 24
 (A)
 
 
 25
 We turn next to PSS' contention that PLI's status as an affiliated corporation filing a consolidated tax return abolished any interest it had in the right to use its NOL to offset its income. We disagree.
 
 
 26
 Affiliated corporations that meet certain criteria are entitled to file a consolidated tax return. 26 U.S.C. Secs. 1501-04 (1988). Such returns are filed in the name of the "common parent", who acts as the agent for each subsidiary in the group and acts on behalf of the group in all matters related to tax liability for the consolidated group. 26 C.F.R. Sec. 1.1502-77(a) (1990). A corporation must consent to the filing of a consolidated return on its behalf. 26 C.F.R. Sec. 1.1502-75(b) (1990). Once consent is given, an affiliated group must obtain the permission of the IRS to deconsolidate. Koscot Interplanetary, Inc. v. Glenn Turner Enters., Inc. (In re Koscot Interplanetary, Inc.), 76-1 U.S. Tax Cas. (CCH) p 9442, at 84,188, 1976 WL 1029 (M.D.Fla.1976); 26 C.F.R. Sec. 1.1502-75(c) (1990). The filing of a bankruptcy petition by one of the members of the group does not mandate a deconsolidation of the group. In re Koscot, supra, at 84,187.
 
 
 27
 "Those [corporations that] file consolidated returns are 'treated as a single entity for income tax purposes as if they were, in fact, one corporation.' " Exxon Corp. v. United States, 785 F.2d 277, 280 (Fed.Cir.1986) (citation omitted); see also International Tel. & Tel. Corp. v. United States, 608 F.2d 462, 474, 221 Ct.Cl. 442 (Cl.Ct.1979) ("[a] consolidated group of corporations filing a consolidated return is considered a single taxpayer"); American Standard, Inc. v. United States, 602 F.2d 256, 261, 220 Ct.Cl. 411 (Cl.Ct.1979) ("purpose behind allowing corporations to file consolidated returns is to permit affiliated corporations, which may be separately incorporated for various business reasons, to be treated as a single entity for income tax purposes as if they were, in fact, one corporation"). Accordingly, NOLs of the affiliated corporations may be aggregated and applied against the consolidated income of the group. 26 C.F.R. Sec. 1.1502-21 (1990).
 
 
 28
 In the instant case, PSS and PLI, along with two other affiliated corporations, have filed a consolidated tax return since 1976. Although the confirmation of the reorganization plan and the concomitant change in ownership of PLI will cause PLI's departure from the group, the corporations were still consolidated for tax purposes in the tax year in question. PSS contends that since PLI was a member of a group that filed a consolidated tax return, the common parent, not PLI, controlled the manner in which PLI's NOL would be applied against income of the group members. PSS contends, therefore, that the right to the NOL carryforward was not PLI's property at the commencement of the bankruptcy case.
 
 
 29
 In support of its position, PSS relies on a series of cases that stand for the proposition that one member of an affiliated group does not have to compensate another member for tax benefits accruing to it through the use of the other member's NOL. E.g., Western Pac. R.R. Corp. v. Western Pac. R.R. Co., 197 F.2d 994, 1004 (9 Cir.1951), rev'd on other grounds, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953); In re Coral Petroleum, Inc., 60 B.R. 377, 389 (Bankr.S.D.Tex.1986); In re All Products Co., 32 B.R. 811, 814 (Bankr.E.D.Mich.1983); M & M Transp. Co. v. U.S. Indus., Inc., 416 F.Supp. 865, 869 (S.D.N.Y.1976); Meyerson v. El Paso Natural Gas Co., 246 A.2d 789, 791-94 (Del.Ch.1967); Case v. New York Cent. R.R. Co., 15 N.Y.2d 150, 158, 204 N.E.2d 643, 647, 256 N.Y.S.2d 607, 612 (1965). That reliance is misplaced.
 
 
 30
 The above cases were decided under fiduciary duty and contract standards. Western Pac., supra, 197 F.2d at 999 (bankrupt subsidiary did not breach fiduciary duty by using parent's NOL to offset its income); In re Coral Petroleum, supra, 60 B.R. at 390-91 (corporate debtor did not have fiduciary duty to compensate subsidiary for use of its NOL to offset income of other subsidiaries on consolidated return and was not unjustly enriched by that action); In re All Prods. Co., supra, 32 B.R. at 813-15 (bankrupt subsidiary could not reduce parent's claim by amount that parent's tax liability was diminished through use of subsidiary's NOL on consolidated return); M & M Transp. Co., supra, 416 F.Supp. at 869 (former subsidiary seeking compensation from former parent for use of NOL on consolidated return that resulted in tax refund); Meyerson, supra, 246 A.2d at 791-94 (parent did not breach fiduciary duty by using subsidiary's NOL to offset its income on consolidated return); Case, supra, 15 N.Y.2d at 154-55, 204 N.E.2d at 644-45, 256 N.Y.S.2d at 608-09 (action to rescind agreement among affiliated corporations regarding the allocation of federal tax liability on consolidated return). As such they are more appropriate to the issues raised by the cross-appeal. Moreover, although some of these cases involved bankrupt corporations, none purported to determine whether the NOL attributable to the bankrupt corporation was property of that corporation's bankruptcy estate.
 
 
 31
 Only In re All Prods. Co. involved a parent corporation's use of its bankrupt subsidiary's NOL to offset its income. In that case, the tax savings occurred prior to the filing of the bankruptcy petition, 32 B.R. at 813, and the court did not consider the issue of whether the NOL attributable to the debtor at the time of the filing of the bankruptcy petition was property of its bankruptcy estate. Moreover, the court in that case found implied consent on the part of the subsidiary to the use of its NOL to offset the parent's income. Id. at 814-15. It is not disputed that "where there is an explicit agreement, or where an agreement can fairly be implied, as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability." Western Dealer Management, Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp., Inc.), 473 F.2d 262, 264 (9 Cir.), cert. denied, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973) (footnotes omitted). However, "consent[ ] to the filing of a consolidated tax return ... cannot be construed to include the transfer of a valuable asset without further consideration." In re Bob Richards, supra, 473 F.2d at 264. There was no explicit agreement between PSS and PLI as to the allocation of PLI's NOL. We discern no such implied agreement.
 
 
 32
 The fact that a subsidiary's NOL ultimately may be used to offset another corporation's income does not mean that the subsidiary loses any interest in its NOL. The common parent acts as an agent on behalf of all the members of the consolidated group "for the convenience and protection of [the] IRS only." Jump v. Manchester Life & Casualty Management Corp., 579 F.2d 449, 452 (8 Cir.1978); accord In re Bob Richards, supra, 473 F.2d at 265. The corporations retain their separate identities and the property interests of the subsidiaries are not absorbed by the common parent. Wolter Constr. Co., Inc. v. Commissioner, 634 F.2d 1029, 1038
 
 
 33
 (6 Cir.1980). It follows that a corporation does not lose any interest it had in the right to use its NOL to offset income because of its status in a group of affiliated corporations that file a consolidated tax return. E.g., 26 C.F.R. Sec. 1.1502-79(a)(1)(ii) (1990) (upon deconsolidation any remaining NOL attributable to a corporation is available to offset income on its separate tax returns); see also In re Bob Richards, supra, 473 F.2d at 265 ("[a]llowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent").
 
 
 34
 We hold that at the commencement of the bankruptcy case against it, PLI had an interest in the $74 million NOL attributable to its pre-bankruptcy operation.
 
 
 35
 (B)
 
 
 36
 This brings us to the question whether PLI's interest in the right to carryforward its $74 million NOL to offset future income is property of the estate within the meaning of Sec. 541. We hold that it is.
 
 
 37
 In Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (Harlan, J.), the Supreme Court, construing Sec. 541's predecessor, considered whether a NOL carryback that resulted in a tax refund to an individual debtor was property of that debtor's estate. The Court held that a NOL carryback was property of an individual debtor's estate. Id. at 380, 86 S.Ct. at 515. Recognizing the "conceptual[ ] as well as practical[ ]" differences between carrybacks and carryforwards, the Court declined to decide the issue of whether NOL carryforwards were also property of the estate. Id. at 381, 86 S.Ct. at 515. It expressed concern that including NOL carryforwards as property of the estate of an individual debtor could endanger the fresh start policy of the Bankruptcy Act by forcing the estate to remain open for a long period. Id.
 
 
 38
 The legislative history of Sec. 541 demonstrates that Congress agreed with the result reached by the Segal Court.
 
 
 39
 "[T]he estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in [the predecessor statute to Sec. 541]. ... The result of Segal v. Rochelle, 382 U.S. 375 [86 S.Ct. 511, 15 L.Ed.2d 428] (1966), is followed, and the right to a refund is property of the estate."
 
 
 40
 S.Rep. No. 95-989, 95th Cong. 2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868; H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 367, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6323 (footnote omitted).
 
 
 41
 Courts, applying Segal, have held that a subsidiary is entitled to a tax refund due to its NOL carryback to the extent that it offsets its own income. E.g., Jump, supra, 579 F.2d at 452; In re Bob Richards, supra, 473 F.2d at 264; In re Revco D.S., Inc., 111 B.R. 631, 639 (Bankr.N.D.Ohio 1990). Courts considering whether NOL carryforwards constitute property of the estate have reached varying conclusions in varying contexts. Compare Jump, supra, 579 F.2d at 453 ("the right to use its net operating loss to gain carryover tax advantage was not an asset of [a liquidating subsidiary] because its value was conditioned on the existence of future income potential of [the subsidiary]") and Davis v. Commissioner, 69 T.C. 814, 827 (1978) ("net operating loss carryover cannot constitute property" of an individual debtor's estate) with In re Beery, 116 B.R. 808, 810 (D.Kan.1990) (right to use NOL carryforward is property of debtor's estate).
 
 
 42
 PSS contends that Segal does not control the instant case since it involved a NOL carryback rather than a NOL carryforward, and an individual rather than a corporate debtor filing a consolidated return. Those distinctions do not require a contrary result here.
 
 
 43
 Carryforwards differ in nature from carrybacks. Carrybacks result in the right to a tax refund of a definite amount. Carryforwards, by contrast, are speculative since their value depends on the availability of future income against which to apply them. The speculative nature of carryforwards does not place them outside the definition of property of the estate. "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal, supra, 382 U.S. at 379, 86 S.Ct. at 515; see also H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 175-76, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6136 (property of the estate "includes all interests, such as ... contingent interests and future interests, whether or not transferable by the debtor"). The fact that the right to a NOL carryforward is intangible and has not yet been reduced to a tax refund also does not exclude it from the definition of property of the estate. In re Golden Plan, supra, 37 B.R. at 169. In short, interests whose value is speculative and interests that involve intangible rights that are subject to regulation may be included as property of the estate. E.g., Neuton v. Danning (In re Neuton), 922 F.2d 1379, 1382-83 (9 Cir.1990) (interest in trust contingent on survivorship is property of the estate); Tringali v. Hathaway Mach. Co., 796 F.2d 553, 560 (1 Cir.1986) (liability insurance policy is property of the estate); Beker Indus. Corp. v. Florida Land & Water Adjudicatory Comm'n (In re Beker Indus. Corp.), 57 B.R. 611, 622 (Bankr.S.D.N.Y.1986) (right to truck products from mine is property of estate); In re Golden Plan, supra, 37 B.R. at 169 (corporate name is property of the estate). Thus, the nature of the interest involved in the instant case does not compel a conclusion that it is not property of the estate.
 
 
 44
 As the Segal Court observed, the main hurdle to including NOL carryforwards as property of the estate is the detrimental impact it could have on the fresh start policy that is promoted by the Bankruptcy Code. Segal, supra, 382 U.S. at 381, 86 S.Ct. at 515. Subsequent legislation has ameliorated that concern with respect to individual debtors and suggests that Congress intended that NOL carryforwards be included in the property of the estate of individual as well as corporate debtors.
 
 
 45
 Congress provided for the tax treatment of debtors and their bankruptcy estates in Sec. 346 of the Bankruptcy Code. With respect to individual debtors, Congress provided that the income to their estates could be taxed separately from the income to the individual debtor. 11 U.S.C. Sec. 346(b)(1) (1988). Congress also provided that the estate succeeds to the tax attributes of individual debtors including "any loss carryover." 11 U.S.C. Sec. 346(i)(1)(C) (1988). To address the Segal Court's concern that including carryforwards as property of the estate would jeopardize the fresh start policy, Congress provided that unutilized tax attributes revert to the debtor at the conclusion of the case. 11 U.S.C. Sec. 346(i)(2) (1988). Section 346(i) seems to contemplate that NOL carryforwards, as well as carrybacks, become property of an individual debtor's bankruptcy estate. Other subsections contemplate use of NOL carryforwards by a corporate debtor. E.g., 11 U.S.C. Sec. 346(h) (1988) (determination of periods in which debtor may use NOL carryover); 346(j)(3) (NOL carryover of individual or corporate debtor is reduced by the amount of debt forgiven or discharged).
 
 
 46
 We do not read Sec. 346(i) as applying to corporate debtors. E.g., Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 920 F.2d 183, 187 (2 Cir.1990) (section permitting individual debtors to recover sanctions for willful violations of automatic stay cannot be read to apply to corporate debtors). Congress' failure to include corporate debtors in that provision does not imply, however, that Congress meant to treat NOL carryforwards of corporate debtors differently than those of individual debtors. Since the bankruptcy estate of a corporate debtor is not a separate entity for tax purposes, 11 U.S.C. Sec. 346(c)(1) (1988), there was no need for Congress to provide that carryovers are transferred to the estate and then back to the corporate debtor at the conclusion of the case.
 
 
 47
 Corporations attempting to reorganize under Chapter 11 are ongoing concerns that generate income used to pay pre-petition creditors. Whiting Pools, supra, 462 U.S. at 203, 103 S.Ct. at 2312. Furthermore, a liquidating corporation's debts are not discharged in bankruptcy. 11 U.S.C. Sec. 727(a)(1) (1988). The fresh start policy, therefore, does not apply to corporate debtors. City of New York v. Quanta Resources Corp. (In re Quanta Resources Corp.), 739 F.2d 912, 915 n.7 (3 Cir.1984), aff'd, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); In re Blanton, 105 B.R. 811, 824 (Bankr.W.D.Tex.1989); see also Note, Bankruptcy and the Union's Bargain: Equitable Treatment of Collective Bargaining Agreements, 39 Stan.L.Rev. 1015, 1025 n.67 (1987) ("the fresh start policy does not apply to corporations"). Thus, the concern that the Segal Court expressed does not apply to a situation involving a corporate debtor. When the fresh start policy is not implicated, the argument for including NOL carryforwards as property of the bankruptcy estate is strengthened. Compare In re Beery, supra, 116 B.R. at 810 (NOL carryforward is property of the estate; fresh start policy not implicated since individual not entitled to discharge because of misconduct) with Davis, supra, 69 T.C. at 827-28 (relying on detriment to fresh start policy in case where NOL carryforward had value only to debtor, but not to estate, to conclude that it was not property of the estate).
 
 
 48
 Finally, in determining the scope of Sec. 541 we must consider the purposes animating the Bankruptcy Code. Kokoszka v. Belford, 417 U.S. 642, 645, 94 S.Ct. 2431, 2433, 41 L.Ed.2d 374 (1974); Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 113, 27 L.Ed.2d 124 (1970); Segal, supra, 382 U.S. at 379, 86 S.Ct. at 515. Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 176, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6136. Moreover, "[a] paramount and important goal of Chapter 11 is the rehabilitation of the debtor by offering breathing space and an opportunity to rehabilitate its business and eventually generate revenue." International Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines, Inc., 121 B.R. 428, 433 (S.D.N.Y.1990), aff'd, 923 F.2d 26 (2 Cir.1991). Including the right to a NOL carryforward as property of PLI's bankruptcy estate furthers the purpose of facilitating the reorganization of PLI. The fact that both plans for reorganization contemplated its availability to the reorganized company suggests that PLI's $74 million NOL was a valuable asset of PLI.
 
 
 49
 We hold that the right to a carryforward attributable to its $74 million NOL was property of PLI's bankruptcy estate.
 
 IV.
 
 50
 We turn now to PSS' contention that the bankruptcy court erred in enjoining it from taking a worthless stock deduction on its 1988 tax return. We hold that the injunction entered by the bankruptcy court was proper.
 
 
 51
 The commencement of a bankruptcy case operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. Sec. 362(a)(3) (1988). "The reach of the automatic stay is limited by its purposes." Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc., 50 B.R. 25, 26 (S.D.N.Y.1985); accord Rett White Motor Sales Co. v. Wells Fargo Bank, 99 B.R. 12, 13 (N.D.Cal.1989). One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors. Holtkamp v. Littlefield (In re Holtkamp), 669 F.2d 505, 508 (7 Cir.1982); In re Fed. Press Co., 117 B.R. 942, 946 (Bankr.N.D.Ind.1989); In re Gatke Corp., 117 B.R. 406, 408 (Bankr.N.D.Ind.1989).
 
 
 52
 In the instant case, if PSS were allowed to take a worthless stock deduction on its 1988 tax return, it would effectively eliminate the value of the NOL carryforward to PLI and thus have an adverse impact on PLI's reorganization. The use of NOLs as tax deductions following a change in ownership of a corporation is governed by 26 U.S.C. Sec. 382 (1988). The amount of the deduction is limited to "the value of the old loss corporation" multiplied by "the long-term tax-exempt rate". 26 U.S.C. Sec. 382(b) (1988). A change of ownership is deemed to have occurred if a greater than 50 percent shareholder takes a worthless stock deduction, but retains the stock at the end of the taxable year. 26 U.S.C. Sec. 382(g)(4)(D) (1988). The value of the old loss corporation is generally measured by the value of the stock immediately prior to the ownership change. 26 U.S.C. Sec. 382(e)(1) (1988). Since PSS owned 100 percent of the stock of PLI, if it declared that stock to be worthless and retained ownership of the stock at the end of the taxable year, the value of the PLI stock would be zero for the purposes of Sec. 382. Accordingly, the "new" corporation would not be entitled to any NOL carryforward.
 
 
 53
 In 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427 (2 Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988), we held that a landlord's attempt to terminate its lease with a non-debtor was subject to the automatic stay since it would have had the legal effect of terminating the debtor's sublease. Id. at 431. Despite the fact that the landlord's action was not directed specifically at the debtor, we held that
 
 
 54
 "where a non-debtor's interest is intertwined ... with that of a bankrupt debtor ... [and an] action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay."
 
 
 55
 Id. Similarly, where a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay.
 
 
 56
 In the instant case, PSS' interest in its worthless stock deduction is intertwined with PLI's NOL. If PSS were permitted to take a worthless stock deduction on its 1988 tax return, it would have an adverse impact on PLI's ability to carryforward its NOL. Accordingly, despite the fact that PSS' action is not directed specifically at PLI, it is barred by the automatic stay as an attempt to exercise control over property of the estate.
 
 
 57
 The permanent injunction entered by the bankruptcy court also is supported by its equitable powers pursuant to Sec. 105(a). That provision grants the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. Sec. 105(a) (1988). "This provision has been construed liberally to enjoin [actions] that might impede the reorganization process." MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93 (2 Cir.), cert. denied, 488 U.S. 868 (1988). In light of the testimony of the parties that the $74 million NOL was a valuable asset of PLI, we will not disturb the bankruptcy court's finding that elimination of the right to apply its NOL to offset income on future tax returns would impede PLI's reorganization.
 
 
 58
 Finally, we consider PSS' claim that the bankruptcy court was without jurisdiction to enter the injunction. PSS relies for this proposition on a series of cases that held that Sec. 505(a)(1) of the Bankruptcy Code, which gives the bankruptcy court the power to "determine the amount or legality of any tax", does not confer jurisdiction on the bankruptcy court to adjudicate the tax liability of non-debtors. E.g., American Principals Leasing Corp. v. United States, 904 F.2d 477, 480-81 (9 Cir.1990); Brandt-Airflex Corp. v. Long Island Trust Co., N.A. (In re Brandt-Airflex Corp.), 843 F.2d 90, 95-96 (2 Cir.1988); In re Vermont Fiberglass, Inc., 88 B.R. 41, 43-44 (D.Vt.1988).
 
 
 59
 In the instant case, the bankruptcy court did not determine the amount or legality of PSS' tax liability. The bankruptcy court's power was based on its jurisdiction over property of the estate. In re Johns-Manville Corp., supra, 837 F.2d at 91. Having properly exercised jurisdiction, the bankruptcy court may enter an injunction that affects derivative rights of a non-debtor. Id. at 92-93.
 
 V.
 
 60
 Since we hold that the bankruptcy court's injunction was justified based on count three of the complaint, we find it neither necessary nor appropriate to consider the issues raised by the cross-appeal of the Creditors' Committee and Cold Spring.
 
 VI.
 To summarize:
 
 61
 We hold that the right to carryforward a tax deduction due to the NOL attributable to PLI's pre-bankruptcy operation was property of PLI's bankruptcy estate. We further hold that PSS' attempt to take a worthless stock deduction with respect to its PLI stock that would effectively destroy the value of the NOL carryforward generated by PLI was properly enjoined by the bankruptcy court. We do not consider the issues raised by the cross-appeal.
 
 
 62
 Affirmed.