RONALD LEE GILMAN, Circuit Judge,
concurring.
I agree with the result reached by the lead opinion and with all of its analysis other than in Part H.B., which is titled “The Propriety of the Bob Richards Court’s Analysis.” The lead opinion in Part II.B. rejects what it characterizes as the federal common-law rule set forth in Western Dealer Management, Inc. v. England (“In re Bob Richards Chrysler-Plymouth Corp.”), 473 F.2d 262 (9th Cir.1973), and instead instructs the district court to look solely to state law in deciding whether AFC (the bank holding company) or AmTrust (the bank) owns the tax refund in question.
In contrast to the lead opinion, I do not read the Bob Richards decision as requiring an “either-or” choice between federal and state law. The key holding of that case is as follows:
[W]here there is an explicit agreement, or where an agreement can fairly be implied, as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability. But in the instant case the parties made no agreement concerning the ultimate disposition of the tax refund. Absent any differing agreement^] we feel that a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member.
*539 Id. at 264-65. That is, Bob Richards held that courts should first look to state corporate and contract law to resolve doubts in situations such as this and, only if the court comes up empty handed, should the court then allocate the refund to the entity that generated the refund because federal tax law does not change the ownership of the refund.
This view appears to have gained general acceptance since the Ninth Circuit issued its decision in 1973. In In re Prudential Lines Inc., 928 F.2d 565 (2d Cir.1991), for example, the Second Circuit considered whether a parent or a subsidiary owned a net operating loss that had been accrued by the subsidiary prior to the subsidiary entering bankruptcy. The Second Circuit first acknowledged that “where there is an explicit agreement, or where an agreement can fairly be implied, as a matter of state corporation law the parties are free to adjust among themselves the ultimate tax liability.” Id. at 570 (quoting Bob Richards, 473 F.2d at 265). But the Second Circuit concluded that “[t]here was no explicit agreement between [the parent] and [the subsidiary] as to the allocation of [the subsidiary’s net operating loss]. [And][w]e discern no such implied agreement.” Id. at 570-71. The court then concluded “that a corporation does not lose any interest it had in the right to use its [net operating loss] to offset income because of its status in a group of affiliated corporations that file a consolidated tax return.” Id. at 571. In other words, the requirement that companies file consolidated tax returns caused no change in ownership of the losses or proceeds associated therewith.
The Fifth Circuit followed a similar approach in Capital Bancshares, Inc. v. Federal Deposit Insurance Corp., 957 F.2d 203 (5th Cir.1992). Considering whether a parent or a bankrupt subsidiary owned a tax refund paid to the parent, the court reasoned: “Following the In re Bob Richards reasoning, the refund is the property of the Bank in the absence of a contrary agreement.” Id. at 208.
This brings us to two more recent decisions in the Eleventh Circuit. The first is In re BankUnited Financial Corp., 727 F.3d 1100 (11th Cir.2013), cert. denied, — U.S. -, 134 S.Ct. 1505, 188 L.Ed.2d 388 (2014), where the Eleventh Circuit considered whether a tax refund generated by an insolvent bank was owned by the bank or by the bank’s holding company that filed the consolidated tax return. It framed the dispositive question as “a matter of contract interpretation,” id. at 1104, and ultimately concluded, based on an analysis of the Tax Sharing Agreement, that the tax refund should be distributed to the bank, id. at 1109.
The Eleventh Circuit quickly returned to the same issue in In re NetBank, Inc., 729 F.3d 1344 (11th Cir.2013). Again considering the tax-sharing agreement before it, the Eleventh Circuit concluded as follows:
Following the BankUnited decision, and implementing the express provision in the instant TSA, we apply state contract law — i.e., Georgia contract law. We note, however, that the outcome of the instant case would not be different if the “Bob Richards rule” were applied. We conclude that the intent of the parties expressed in the TSA — the controlling factor under either Georgia contract law or the federal common law as articulated in the “Bob Richards rule” — created an agency relationship.
Id. at 1347 n. 3. I do not consider the above-quoted passage to be expressing disagreement with Bob Richards. It can just as easily be read as saying that the Bob Richards rule would result in the same outcome even if there were no agreement.
I believe that all of these cases can be reconciled with the following protocol: *540 First look to the tax-sharing agreement (TSA) to settle the refund issue. But if the TSA is ambiguous, then determine whether an agreement between the parties can be implied under state law. And if that inquiry also proves inconclusive, then the loss belongs to the entity that generated the tax refund because federal tax law does not change the ownership of the refund.
This protocol is based on the foundational case of Bob Richards and has essentially been followed by all of our sister circuits that have weighed in on the issue. I thus see no need for the lead opinion to opine on what is sees (wrongly in my view) as a purported conflict between state law and federal common law.